UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR. NO. 17-00276 LEK |
| Plaintiff, | |
| vs. | |
| AMANDA BREMER, | |
| Defendant. | |

## ORDER GRANTING DEFENDANT'S MOTION FOR REDUCTION IN SENTENCE (COMPASSIONATE RELEASE) FILED 10/13/21 [DKT. NO. 40]

Defendant Amanda Bremer ("Bremer") seeks reduction of her sentence, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), for compassionate release from and to reduce her sentence of imprisonment to time served. See Defendant's Motion for Reduction in Sentence (Compassionate Release) ("Motion"), filed 10/13/21 (dkt. no. 40) at 1. She submits that she would have been safety valve eligible under the First Step Act of 2018 ("First Step Act"), Pub. L. No. 115-391, 132 Stat. 5194 (2018), and thus eligible for a sentence below the statutory minimum of imprisonment but for the First Step Act being signed into law the year after she was sentenced. She argues that her sentence is disproportionate relative to her guideline imprisonment range that would have applied if the Court was able to grant safety valve relief and to the sentence that she would have received

without the constraint of the statutory minimum of 120 months imprisonment.  [Memorandum in Support of Motion ("Mem. in Supp."), filed 10/14/21  (dkt. no. 42), at 2-3.]  Bremer also argues that she is overweight and at a greater risk for serious illness or death if she were to contract COVID-19.  [Id. at 20-21.]

The sentencing disparity justifies compassionate release.  Therefore, the Motion is GRANTED, and Bremer's sentence is ORDERED to be reduced to 78 months of incarceration with five years of supervised release to follow her release from incarceration.

## BACKGROUND

Bremer was indicted on April 26, 2017 and charged with one count of knowingly and intentionally attempting to possess with intent to distribute fifty grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.  See Indictment filed 4/26/17 (dkt. no. 8).  She entered a guilty plea on August 10, 2017, see Minutes - EP: Motion for Withdrawal of Not Guilty Plea and to Plead Anew, filed 8/10/17 (dkt. no. 27) ("8/10 Court Minutes"), and was sentenced on November 30, 2017 to 120 months imprisonment followed by five years of supervised release.  See Judgment in a Criminal Case ("Judgment"), filed 12/1/17 (dkt. no. 36), at 2-3.  Bremer is currently housed in Federal Bureau

2

of Prisons ("BOP") custody at Alderson Federal Prison Camp ("FPC
Alderson"), a minimum-security federal prison camp in Alderson,
West Virginia, and has a projected release date of October 25,
2025.  Federal Bureau of Prisons, Find an inmate,
https://www.bop.gov/inmateloc (last visited Apr. 25, 2022);
Federal Bureau of Prisons, FPC Alderson,
https://www.bop.gov/locations/institutions/ald (last visited
Apr. 25, 2022).  Bremer points out that she "had completed ten
BOP programs prior to such programs were shut down due to the
pandemic – some . . . even before she was sentenced."  [Mem. in
Supp. at 28 (citing Motion, Exh. E (Program Certificates)).]  In
addition to these educational courses, she has a "solid release
plan [to] ensure a safe and successful transition back to her
community and enable her to raise her daughter while helping her
mother . . . ."  Id. at 32; see also Motion, Exh. F
(Individualized Reentry Plan - Program Review (Inmate Copy),
dated 3/27/19) at PageID #: 322-23.

        Plaintiff United States of America ("the Government")
opposes the Motion.  See Government's Opposition to Defendant's
Motion to Reduce Sentence Under First Step Act (Compassionate
Release) ("Mem. in Opp."), filed 10/29/21 (dkt. no. 45).  It
submits that Bremer "has served approximately 54 months
(approximately 52%, assuming [she] receive[d] 'good time
credit')," and that she has had "two disciplinary infractions

3

for indecent exposure and being in an unauthorized area . . .
for which she was punished with 30 days of loss of email and
commissary." [Id. at 4 (citing Mem. in Opp., Exh. A (Bremer's
Inmate Discipline Data - Chronological Disciplinary Record).]
It argues that Bremer "has the burden to show circumstances
meeting the test for compassionate release," and that
"compassionate release is 'rare' and 'extraordinary.'" [Id. at
12 (citations omitted).] The mere fact of the COVID-19 pandemic
does not provide a basis for sentence reduction, it submits, and
the Government emphasizes that "[a]n inmate who has not been
offered a vaccine, who presents a [recognized medical condition
that makes it more likely that the inmate may become severely
ill from COVID-19] presents an 'extraordinary and compelling
reason' [for] compassionate release." [Id. 14-15.] Bremer is
vaccinated.[1] As to the application of the safety valve
provisions implemented by the First Step Act, the Government
submits that, while the Ninth Circuit has not yet decided the
issue, the rationale of the Third, Sixth, and Seventh Circuits
are compelling in their conclusion that the First Step Act
amendments do not constitute extraordinary and compelling
reasons for sentence reduction, and emphasizes that Congress did

---

[1] Bremer informs the Court that she was fully vaccinated for
COVID-19 as of May 26, 2021. See Defendant's Statement As to
Vaccination Status, filed 10/18/21 (dkt. no. 44), at 1.

not make the changes reflected in the First Step Act

retroactive.  [Id. at 15-16.]

## DISCUSSION

Generally, courts have limited power to modify terms

of imprisonment after a defendant has been sentenced.  Dillon v.

United States, 560 U.S. 817, 819 (2010) ("A federal court

generally 'may not modify a term of imprisonment once it has

been imposed.'" (quoting 18 U.S.C. § 3582(c)).  As amended by

the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i) authorizes an

exception to the general rule and permits modification of a

sentence:

> (c)  Modification of an imposed term of
> imprisonment.--The court may not modify a term of
> imprisonment once it has been imposed except
> that--
>
> (1)  in any case--
>
> (A)  the court, upon motion of the
> Director of the Bureau of Prisons, or
> upon motion of the defendant after the
> defendant has fully exhausted all
> administrative rights to appeal a
> failure of the Bureau of Prisons to
> bring a motion on the defendant's
> behalf or the lapse of 30 days from the
> receipt of such a request by the warden
> of the defendant's facility, whichever
> is earlier, may reduce the term of
> imprisonment (and may impose a term of
> probation or supervised release with or
> without conditions that does not exceed
> the unserved portion of the original
> term of imprisonment), after
> considering the factors set forth in

> > section 3553(a) to the extent that they
> > are applicable, if it finds that--
>
> > > (i)  extraordinary and compelling
> > > reasons warrant such a
> > > reduction . . .
> >
> > > and that such a reduction is
> > > consistent with applicable policy
> > > statements issued by the
> > > Sentencing Commission[.]

Thus, Bremer is required to demonstrate both exhaustion of administrative remedies and that "extraordinary and compelling reasons" exist to warrant sentence reduction.

## I.   Exhaustion

Section 3582(c)(1)(A) "imposes a mandatory claim-processing rule that must be enforced when properly invoked." United States v. Keller, 2 F.4th 1278, 1282 (9th Cir. 2021) (per curiam) (citations omitted).  The Government agrees that Bremer has met the administrative exhaustion requirement.  See Mem. in Opp. at 4.

## II.  Extraordinary and Compelling Reasons

A sentence reduction is only permitted where there are "extraordinary and compelling reasons," and if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  § 3582(c)(1)(A)(i).  The key term "extraordinary and compelling reasons" was not, however, defined:

Congress provided no statutory definition of "extraordinary and compelling reasons."  Instead, Congress stated that the Sentencing Commission, "in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."  28 U.S.C. § 994(t); see also id. § 994(a)(2)(C).

United States v. Aruda, 993 F.3d 797, 800 (9th Cir. 2021).  The Sentencing Commission does provide guidance in its policy statement as considerations for finding "extraordinary and compelling reasons" and sets forth certain circumstances that justify sentence reduction, including serious medical conditions, advanced age, certain family circumstances, and other reasons "[a]s determined by the Director of the Bureau of Prisons."  U.S.S.G. § 1B1.13, cmt. n.1.  However, this statement has not been updated "since the First Step Act amended § 3582(c)(1)(A)."  Aruda, 993 F.3d at 800.  Thus, "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding."  Id. at 802 (citing United States v. Gunn, 980 F.3d 1178, 1180 (7th Cir. 2020)).

A.    **Medical Risk of Severe Illness or Death**

The COVID-19 pandemic has brutally held sway over the world for more than two years now.  Medical knowledge about this

7

virus has rapidly evolved but much still is not known about the
full extent of its virulence and the long-term effects from
infection.  What is currently known at this time is that COVID-
19 vaccinations significantly reduce hospitalizations and
deaths, even with COVID-19 variant outbreaks in correctional and
detention facilities.  See, e.g., Centers for Disease Control
and Prevention ("CDC"), Morbidity and Mortality Weekly Report,
"Outbreak of SARS-CoV-2 B.1.617.2 (Delta) Variant Infections
Among Incarcerated Persons in a Federal Prison - Texas, July-
August 2021," dated 9/24/21, https://www.cdc.gov/mmwr/volumes/
70/wr/mm7038e3.htm (last visited Apr. 25, 2022).  Likewise, the
conditions of confinement in BOP facilities have been, as Bremer
describes: "nothing less than punitive, counterproductive, and
cruel" by "plac[ing] inmates on lockdown including to restrict
inmate movement" and to "shut down [BOP programs]."  [Mem. in
Supp. at 24-25.]  These conditions are compounded by, as Bremer
notes, the failure of having BOP staff in FPC Alderwood fully
vaccinated.  [Id. at 25-26.]  However, as articulated by the
Government, in response to the unprecedented COVID-19 crisis,
BOP has "made extensive changes to its operations, . . . in
consultation with the Centers for Disease Control and the World
Health Organization."  [Mem. in Opp. at 5.]  Even where prison
regulations impede an inmate's constitutional rights, these
regulations will be upheld if the regulations are "reasonably

8

related to legitimate penological interests." <u>Tuner v. Safley</u>, 482 U.S. 78, 89 (1987).  The COVID-19 measures are in response to the need to mitigate risk of contagion within BOP facilities and thus, while seemingly harsh, are rationally connected and reasonable.

The law requires a specific finding of "extraordinary and compelling reasons."  Bremer has received two doses of the COVID-19 vaccination.  Although it is possible that her weight may pose a risk of serious illness or death should she contract a breakthrough case of COVID-19, and the low rate of vaccination among staff at FPC Alderwood may pose an increased risk of such a breakthrough case, according to the CDC, "COVID-19 vaccines available in the United States are effective at protecting people from getting seriously ill, being hospitalized, and even dying – especially people who are boosted." <u>See</u> CDC, Stay Up to Date with Your COVID-19 Vaccines, updated Apr. 2, 2022, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated-guidance.html (last visited Apr. 25, 2022).  It is unlikely that, if infected, Bremer will need to be hospitalized or die.  The Court therefore cannot conclude that she demonstrates an extraordinary and compelling reason to grant compassionate release based on her medical condition, the conditions of incarceration and COVID-19 variants.

**B.**   **Sentencing Disparity**

In 2017, Bremer plead guilty to one count of an
attempted drug distribution charge involving 50 grams or more of
methamphetamine.  [8/10 Court Minutes.]  Although Bremer's
guideline imprisonment range was determined to be 97 to 121
months of imprisonment, she was not eligible for safety valve at
the time of sentencing and, because the minimum of this
guideline range was less than the statutory minimum for
imprisonment of 120 months, her applicable guideline range was
determined to be 120 to 121 months.  [Amended Presentence
Investigation Report ("PSR"), filed under seal 12/1/17 (dkt.
no. 35), at ¶¶ 46, 83.]  Consequently, she was sentenced to 120
months of imprisonment and five years of supervised release.
See Judgment at 2-3.  In sum, Bremer argues that her
extraordinary and compelling circumstance justifying a sentence
reduction is sentencing disparity; that is, if she had been
sentenced after the First Step Act had been enacted, she would
have qualified for safety valve and "she would not have been
subject to the 120-month mandatory minimum, and her applicable
guideline range would have been 97 to 121 months and with the
readily accepted variance applied to safety valve eligible
defendants, Ms. Bremer's guideline range would have been 78 to
97 months."  [Mem. in Supp. at 15.]  The Court could have then

10

imposed a sentence without regard to the mandatory minimum

sentence.

Specifically, the First Step Act's expansion of the

safety valve provision in § 3553(f) now provides:

(f)  Limitation on applicability of statutory
minimums in certain cases.--Notwithstanding any
other provision of law, in the case of an offense
under section 401, 404, or 406 of the Controlled
Substances Act (21 U.S.C. 841, 844, 846), section
1010 or 1013 of the Controlled Substances Import
and Export Act (21 U.S.C. 960, 963), or section
70503 or 70506 of title 46, the court shall
impose a sentence pursuant to guidelines
promulgated by the United States Sentencing
Commission under section 994 of title 28 without
regard to any statutory minimum sentence, if the
court finds at sentencing, after the Government
has been afforded the opportunity to make a
recommendation, that--

(1)  the defendant does not have--

(A)  more than 4 criminal history
points, excluding any criminal history
points resulting from a 1-point
offense, as determined under the
sentencing guidelines;

(B)  a prior 3-point offense, as
determined under the sentencing
guidelines; and

(C)  a prior 2-point violent offense,
as determined under the sentencing
guidelines;

(2)  the defendant did not use violence or
credible threats of violence or possess a
firearm or other dangerous weapon (or induce
another participant to do so) in connection
with the offense;

(3)   the offense did not result in death or serious bodily injury to any person;

(4)   the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

(5)   not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

Information disclosed by a defendant under this subsection may not be used to enhance the sentence of the defendant unless the information relates to a violent offense.

18 U.S.C. § 3553(f)(1)-(5).

The Government does not dispute that, had Bremer been sentenced after the First Step Act's amendment of the safety valve requirements, she would have met that statute's requirements.  It argues that she was not safety eligible at the time of sentencing and continues to be ineligible because this law did not expressly permit retroactive application.  This is correct.  Congress did not make the section 402 of the First

Step Act retroactive.[2]  It clearly did not intend to provide
expanded relief under § 3582(c) to **all** defendants already
serving a mandatory minimum sentence of incarceration and who
have newly qualifying criminal history scores.  "[T]he axiom
that '[r]etroactivity is not favored in the law,' and its
interpretive corollary that 'congressional enactments and
administrative rules will not be construed to have retroactive
effect unless their language requires this result.'"  Landgraf
v. USI Film Prod., 511 U.S. 244, 264 (1994) (quoting Bowen v.
Georgetown Univ. Hospital, 488 U.S. 204, 208 (1988)).

        Likewise it is clear that courts are not precluded
from exercising discretion and considering lengthy sentences
when determining whether compassionate release is appropriate.
See, e.g., United States v. Rosas, Case No. 17cr3431-MMA-4, 2020
WL 7226438, at *4 (S.D. Cal. Dec. 8, 2020) (citing United States
v. Cantu-Rivera, No. CR H-89-204, 2019 WL 2578272, at *2 (S.D.
Tex. June 24, 2019); United States v. Urkevich, No. 8:03CR37,
2019 WL 6037391, at *2 (D. Neb. Nov. 14, 2019); United States v.
Young, No. 2:00-CR-00002-1, 2020 WL 1047815, at *8 (M.D. Tenn.
Mar. 4, 2020); United States v. Maumau, No. 2:08-CR-00758-TC-11,

---

        [2] The section provides: "APPLICABILITY.—The amendments made
by this section [broadening the existing safety valve] shall
apply only to a conviction entered on or after the date of
enactment of this Act."  Section 402(b), Pub. L. No. 115-391,
132 Stat. 5194, 5221 (2018).

2020 WL 806121, at *7 (D. Utah Feb. 18, 2020)); see also United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020) ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release.")).  Moreover, "'![c]ourts may consider individual defendants' circumstances and weigh whether a particular sentencing disparity is truly "extraordinary and compelling" on a case-by-case basis.'"  United States v. Kanohokula, CR. NO. 11-00976 JMS (01), 2021 WL 5411211, at *4 (D. Hawai`i Nov. 18, 2021) (quoting United States v. Haynes, 2021 WL 406595, at *5 (C.D. Ill. Feb 5, 2021)).  Retroactive application on a case-by-case basis also does not undermine Congress's legislative intent in enacting the First Step Act.

        This Court concludes that Congress's refusal to make the First Step Act retroactive does not preclude it from considering whether a sentencing disparity in a particular case constitutes an extraordinary and compelling reason pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

        The Court turns next to determine whether a sentencing disparity exists in this case.  First, it must examine whether Bremer qualifies under the First Step Act's expanded safety valve provision in § 3553(f).  She does.  Both parties agree that, if sentenced today, Bremer would be eligible under the

current safety valve provision found in 18 U.S.C. § 3553(f).
See Mem. in Supp. at 15; Mem. in Opp. at 15.   Therefore, if
sentenced today, Bremer's total offense level would be 29 with a
criminal history category II.

Additionally, the Sentencing Guidelines provide that,
"[i]f the defendant meets the criteria set forth in subdivisions
(1)-(5) of subsection (a) of § 5C1.2 (Limitation on
Applicability of Statutory Minimum Sentences in Certain Cases),
decrease by 2 levels."  U.S.S.G. § 2D1.1(b)(18).  Subsection (a)
of § 5C1.2 refers to language of 18 U.S.C. § 3553(f) that has
since been amended by the First Step Act.  "The 2016 *Guidelines
Manual*, **effective November 1, 2016, remained in effect through
October 31, 2018** as there were no new amendments promulgated by
the Commission."  United States Sentencing Commission, 2016
Guidelines Manual, https://www.ussc.gov/guidelines/2016-
guidelines-manutal (last visited Apr. 26, 2022) (emphasis in
original).  No amendments have been implemented because, "since
early 2019, the United States Sentencing Commission has been
operating without the quorum of four voting members required by
statute to promulgate amendments to the sentencing guidelines,
policy statements, and commentary."  United States Sentencing
Commission, 2021 Guidelines Manual Annotated, "A Message from
the Acting Chair," https://www.ussc.gov/guidelines/2021-
guidelines-manual-annotated (last visited Apr. 26, 2022).

This Court reasons that the United States Sentencing Commission, if it had the proper quorum, would have amended subsection (a) of § 5C1.2 to conform with First Step Act's amendment of 18 U.S.C. § 3553(f) and would have retained the directive of a two-level decrease in the offense level where a defendant meets the criteria of 18 U.S.C. § 3553(f).  Therefore, if Bremer was sentenced today, she would be eligible under the current safety valve provision and thus would also be eligible for a two-level decrease from total offense level 29 to 27, and this would result in a Guideline range of 78 to 97 months of incarceration.  Additionally, if the Court had been permitted to impose a sentence without the constraints of the statutory minimum term of imprisonment, it would have relied upon the strong mitigating factors it stated at the time of sentencing and the social factors reported in the PSR in fashioning a sentence that was sufficient but not greater than necessary to meet the goals of sentencing.  See, e.g., Mem. in Supp. at 16; see also Motion, Exh. C (Transcript of 11/30/17 Sentencing) at 13, 17; PSR at ¶¶ 56, 71.  If the Court had been able to sentence Bremer without regard to a mandatory minimum, Bremer would have merited a sentence at the low end of the guideline range; most likely at 78 months and not the harsh and lengthier sentence of 120 months required by the mandatory minimum.  This results in a disparity of 42 months.

16

Second, the Court considers whether the disparity is significant.  The disparity between the statutory minimum period of incarceration of 120 months and a Guideline range sentence of 78 months is significant.[3]  The question then becomes when is a sentencing disparity sufficient to justify sentence reduction?  Courts have remarked that "the enormous disparity between that sentence and the sentence a defendant would receive today, can constitute an 'extraordinary and compelling' reason for relief . . . ."  United States v. McCoy, 981 F.3d 271, 285 (4th Cir. 2020) (citations omitted).  While most of these cases involve sentences imposed that are decades longer than what Congress now believes are appropriate penalties, the fact remains the policy reasons underlying the First Step Act recognize that sentencing disparities are "primarily the result of Congress' conclusion that [these] sentences . . . are unfair and unnecessary, . . . as well as a legislative declaration of what level of punishment is adequate."  United States v. Redd, 444 F. Supp. 3d 717, 723 (E.D. Va. 2020) (footnote omitted).

---

[3] Notwithstanding the notion that any additional time spent incapacitated by incarceration is subjectively significant to the imprisoned, Bremer has a child who was two years old at the time Bremer was sentenced to 120 months of imprisonment.  [PSR at ¶ 58.]  Her child is now about seven years old, and Bremer mother has been incarcerated for most of her childhood.  Forty-two months, the difference between the sentence that Bremer received and the one that Congress has now deemed appropriate, is an enormous amount of time in the lives of a parent and child who are forced to live without one another.

While enormity of disparity is shocking and thus extraordinary
in and of itself, nowhere is it required that the disparity
between the sentence imposed and the sentence that could have
been imposed must exceed a certain number of years.  Rather,
this Court concludes that the policy considerations against
unfair and unnecessary sentences that go beyond the reason of
"just punishment" are foremost in determining whether a
disparity rises to the level of being an extraordinary and
compelling reason justifying sentence reduction.

        The definition of disparity is "a noticeable and
unusually significant difference or dissimilarity."  Merriam-
Webster, "disparity," www.merriam-
webster.com/dictionary/disparity (last visited Apr. 26, 2022).
The 42-month difference between the sentence imposed and the
sentence she would receive today is noticeably and unusually
significant.  It is a difference of almost four years
imprisonment.  When taking this disparity into account along
with the First Step Act's legislative declaration of adequate
punishment, the Court concludes that the sentencing disparity is
significant to rises to the level of an extraordinary and
compelling reason to warrant sentence reduction.

    C.   **Section 3553(a) Factors**

        Bremer's reduction of sentence is consistent with 18
U.S.C. § 3553(a).  This statute informs courts to consider,

18

among other things, the nature and circumstances of a
defendant's offense and her history and characteristics, to
provide just punishment, and to avoid unwarranted sentencing
disparities.  Bremer was convicted of attempting to distribute
fifty grams of more of methamphetamine.  Her role in the offense
was that she received at least four parcels at her post office
box that she knew contained methamphetamine.  See PSR at ¶¶ 6-8.
Nothing indicates that she was a source of supply, had any
control over the amounts mailed to her, or sold methamphetamine.
At most, she was low-level distributor of methamphetamine.
Similarly situated defendants who were sentenced after the First
Step Act was enacted have been sentenced by this Court for terms
of incarceration far lower than 120 months.  If the Court had
been able to sentence Bremer without regard to a mandatory
minimum, Bremer would have merited a sentence at the low end of
the guideline range; most likely at 78 months and not the harsh
and lengthier sentence of 120 months required by the mandatory
minimum.

     D.   **Risk to the Community**

       Lastly, the Court must consider whether Bremer's
release will present an excessive risk to the community. 18
U.S.C. § 3553(a)(2)(B),(C); U.S.S.G. § 1B1.13(2).  While in
prison, Bremer has sought education and training; [Mem. in Supp.
at 28 (citing Motion, Exh. E (Program Certificates));] has

developed a release plan for her transition back into her community; [id. at 32;] and has only two non-violent infractions during her incarceration, [Mem. in Opp. at 4].  Nothing in Bremer's background and criminal history indicates that she is a danger to the safety of any other person or the community; she does not have a history of violence or mental illness, and her offense did not involve the use of violence nor weapons.  More importantly, her term of incarceration will be followed by a five-year term of supervise release, consistent with her original sentence, to assist her in reentering our community and to provide her with support and supervision consistent with goals of rehabilitation and deterrence.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Reduction in Sentence (Compassionate Release), [filed 10/13/21 (dkt. no. 40),] is GRANTED and her sentence is REDUCED to 78 months of incarceration with 5 years of supervised release to follow her release from incarceration.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, April 26, 2022.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

USA V. AMANDA BREMER; CR 17-00276 LEK; ORDER GRANTING
DEFENDANT'S MOTION FOR REDUCTION IN SENTENCE (COMPASSIONATE
RELEASE) FILED 10/13/21 [DKT. NO. 40]